IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JPMORGAN CHASE BANK, N.A.                                                           PLAINTIFF

VS.                                                          CIVIL ACTION NO. 5:06CV102KS-MTP

LATOYA LOTT                                                                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on a motion to dismiss filed by defendant and a motion to compel arbitration filed by plaintiff. From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court FINDS that defendant's motion to dismiss is not well taken and should be denied and plaintiff's motion to compel arbitration is well taken and should be granted. The court specifically finds as follows:

FACTUAL BACKGROUND

On June 15, 2004, defendant Latoya Lott executed a retail installment contract and security agreement relating to her purchase and financing of a silver Chevy Cavalier (the "Vehicle") from Thames Autoplex, d/b/a River City Autoplex, River City Mitsubishi-Hyundai and Vicksburg Motor Company ("Thames"). Defendant agreed to make 30 monthly payments in the amount of $283 under the terms of the contract. The contract was subsequently assigned to Bank One, N.A., the predecessor in interest to plaintiff JPMorgan Chase Bank, N.A. ("Chase"). As set forth in the affidavit of John M. Thames, Jr., president of Thames, accompanying Chase's motion to compel arbitration, all individuals purchasing automobiles from Thames are required

1

to execute an arbitration agreement, which provides in pertinent part:

> ...all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease or financing of the vehicle, the terms and provisions of the sale, lease, or financing arrangements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. and according to the Commercial Arbitration Rules of the American Arbitration Association.  Without limiting the generality of the foregoing, it is the intention of the Buyer/Lessee and the Dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease, or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease, or financing, the condition of the vehicle, any damage to the vehicle, the validity, enforceability or interpretation of any of the documents signed or given in connection with the sale, lease or financing (including without limitation, this agreement to arbitrate), any representations, promises or omissions made in connection with the financing, credit life insurance, disability insurance, vehicle extended warranty or service contract or other products or services acquired as an incident to the sale, lease or financing of the vehicle.

At the end of the arbitration agreement, it is stated in capital letters: "BUYER/LESSEE AND DEALER UNDERSTAND THAT THEY ARE AGREEING TO RESOLVE THE DISPUTES BETWEEN THEM DESCRIBED ABOVE BY BINDING ARBITRATION, RATHER THAN BY LITIGATION IN ANY COURT."  According to Mr. Thames, this is the same arbitration agreement that was in use at the time Ms. Lott purchased the Vehicle.

Approximately six months after purchasing the Vehicle, Ms. Lott left work and discovered that the Vehicle had been repossessed by a financing lending source (not Bank One) who claimed that the Vehicle was owned by another person and was still subject to a lien which was now in default.  On December 9, 2004, Ms. Lott filed suit in the Circuit Court of Warren

County, Mississippi (the "State Court Action") and on April 21, 2005 she filed an amended complaint against Thames, Chase, Automotive Finance Corporation and John Does 1-4.  In the State Court Action, Ms. Lott asserts multiple claims against Chase relating to her purchase and financing of the Vehicle.

Chase filed the instant suit on July 17, 2006 seeking to compel arbitration of Ms. Lott's claims against Chase in the State Court Action pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, seeking a stay of the State Court Action pending arbitration, and seeking a stay of the instant action pending arbitration.  Defendant moved to dismiss on August 1, 2006 and Chase opposed that motion.  On September 14, 2006, after it was brought to the court's attention that original documents relating to the purchase of the Vehicle had been destroyed, and a request had been made by Ms. Lott for limited discovery regarding the issue of the execution of the arbitration agreement, this court entered an order granting both parties thirty days to conduct such limited discovery and to submit evidence to the court regarding the execution or non-execution of the arbitration agreement.  On October 9, 2006, defendant submitted supplemental evidence in support of her motion to dismiss.  Chase moved to compel arbitration on October 16, 2006.

STANDARD OF REVIEW

<u>Motion to Dismiss</u>

The Fifth Circuit has stated that in order to survive a motion to dismiss for failure to state a cause of action, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. San*

*Antonio*, 43 F.3d 973, 974 (5th Cir. 1995) (citation omitted). In deciding a Rule 12(b)(6) motion, well-pleaded factual allegations in the complaint are accepted by the court as true. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir. 1995). But "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In order to avoid dismissal for failing to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations.") (citation omitted).

In ruling on a motion to dismiss, the court may not go outside the pleadings, specifically the complaint in this case. "The Rule 12(b)(b) motion...only tests whether the claim has been adequately stated in the complaint." 5A C. Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1356 at 298 (1990). As the Fifth Circuit has stated, "[w]e may not go outside the pleadings. We accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Colle v. Brazos Cty., Texas*, 981 F.2d 237, 243 (5th Cir. 1993) (internal footnotes and citations omitted); *see also Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

<u>Motion to Compel Arbitration</u>

Section 4 of the FAA[1] allows a party to petition the court for an order compelling

---

[1] Section 2 of the FAA provides that "[a] written provision ... in a contract evidencing a transaction involving commerce to settle by arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "Involving commerce" means interstate commerce, which includes, *inter alia*, commerce between different states or between a state and a foreign country. *See* 9 U.S.C. **§§** 1, 2. The court finds that the

4

arbitration and directs the court to order the parties to arbitration in accordance with the terms of the arbitration agreement "upon being satisfied that the making of the agreement for arbitration...is not in issue."  The Fifth Circuit has stated that "[i]n considering a motion to compel arbitration, the court must initially 'determine whether the parties agreed to arbitrate the dispute in question.'" *Banks* v. *Mitsubishi Motors Credit of America, Inc.*, 435 F.3d 538, 540 (5th Cir. 2005) (*citing Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).  This determination involves two questions: 1) whether there was a valid arbitration agreement; and 2) whether the dispute in question falls within the scope of that arbitration agreement.[2]  *Id.* (*citing Webb*, 89 F.3d at 258).

## ANALYSIS

Keeping these standards in mind, the court now turns to the facts of this case.  In her deposition, Ms. Lott testified that she did not recall all the documents that she signed in connection with her purchase of the Vehicle, and that she only recalled signing a legal-sized

---

FAA applies in this case.  Ms. Lott is a resident of Mississippi, while Chase is a national bank incorporated in Illinois with its principal place of business in Chicago, Illinois.  In addition, the arbitration agreement itself provides: "Buyer/Lessee thus acknowledges that the vehicle and other aspects of the sale, lease, or financing transaction are involved in, affect, or have a direct impact on, interstate commerce."  The arbitration agreement also expressly incorporates the FAA, stating that claims "shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1 *et seq.* ...."  Moreover, the parties in this case do not dispute that the FAA applies to the arbitration agreement.

   [2]  On the issue of whether there is a valid arbitration agreement, Mississippi contract law applies.  "Where the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the state governing the agreement." *Banks*, 435 F.3d at 540 (citation omitted).  In this case, defendant is a citizen of Mississippi, and the subject transactions were entered into in Mississippi.  Mississippi follows the "center of gravity" approach to choice-of-law issues.  *Id.* at 540 n.*.  Accordingly, Mississippi contract law applies here.  *See id.* at 540.

sheet of paper, of which she received a gold-colored copy.[3]  According to Mr. Thames' affidavit, after a diligent search Thames has been unable to locate the hard copy of the written documents evincing the transactions between Thames and Ms. Lott.  However, Mr. Thames states that Thames' standard arbitration agreement (whose relevant provisions are set forth above and which is attached to Thames' motion to compel arbitration and to Mr. Thames' affidavit) was in effect at the time Ms. Lott purchased her vehicle at Thames, and that Thames requires that every customer purchasing a vehicle from Thames execute this arbitration agreement.  According to Mr. Thames, defendant could not have purchased her vehicle from Thames without signing that arbitration agreement.

     The Fifth Circuit's recent decision in *Banks v. Mitsubishi Motors Credit of America, Inc.*, 435 F.3d 538 (2005) is directly on point.  In that case, Mitsubishi, a finance company, moved to compel arbitration of a dispute with Banks, an automobile buyer who had purchased her automobile from the same dealership as in the instant case - Thames.  As in this case, Mitsubishi did not produce a copy of the signed arbitration agreement, but proffered the affidavit of Mr. Thames, establishing that the signed arbitration agreement could not be located, that Thames requires that every customer execute an arbitration agreement, that Banks could not have purchased a vehicle without signing the arbitration agreement, and setting forth the relevant

---

[3] Defendant alleges that in her deposition she "specifically stated that she had never signed an arbitration agreement, nor did she consent to arbitration of any matter."  However, this court has reviewed the entirety of Ms. Lott's deposition transcript, attached as an exhibit to Chase's motion to compel arbitration, and cannot find any such statement by Ms. Lott.  Ms. Lott merely testified that the only document she could remember signing was the legal-sized sheet of paper of which she received a gold copy, and that she did not remember signing any other documents.  She also testified that she might be able to remember signing other documents if they were shown to her.

terms of the arbitration agreement.  *Id.* at 539-40.  As in this case, Banks failed to provide any evidence in response to the Thames affidavit, and for that reason the court found that it was "unimpeached and uncontradicted and its credibility was in no manner brought into question." *Id.* at 540 (citation omitted).

The *Banks* court then analyzed whether there was a valid agreement to arbitrate, applying Mississippi contract law.  Under Mississippi law, parties may use parol evidence to prove that a contract existed and to prove its terms, where the writing has been destroyed or lost.  *Id.* at 540 (citations omitted).  Accordingly, a written contract that has been destroyed or lost can be enforced.  *See id.* (citation omitted).  In order to recover on a contract that a party cannot produce, the party must demonstrate both (a) the document's former existence and its present unavailability; and (b) the document's contents.  *Id*.

This court finds that the uncontradicted Thames affidavit establishes that an arbitration agreement existed and that the arbitration agreement is presently unavailable, and it establishes the contents of the missing arbitration agreement.  Accordingly, the court concludes that there was a valid arbitration agreement between Ms. Lott and Thames.  *See Banks*, 435 F.3d at 540-41. In doing so, the court rejects Ms. Lott's argument that Chase's inability to produce the written arbitration agreement warrants dismissal of this case.  As discussed above, on a 12(b)(6) motion to dismiss, the issue is whether the complaint adequately states a cause of action such that evidence on that cause of action can be introduced at trial.  Here, the complaint alleges that there is an arbitration agreement between Ms. Lott and Thames.  The fact that Chase is unable to produce a signed copy of the agreement (and, in fact, has established that the agreement is unavailable, but did exist and has established its terms) is immaterial.  Moreover, as discussed

above, where a contract has been destroyed or lost, the parties may - as Chase did - use parol evidence to prove its existence and its terms.  *See Banks*, 435 F.3d at 540 (citations omitted).

The next part of the inquiry is whether the claims at issue fall within the scope of the arbitration agreement.  There is a strong presumption in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 513-14 (Miss. 2005); *Terminix Intern, Inc. v. Rice*, 904 So. 2d 1051, 1054 (Miss. 2004).  Accordingly, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...."  *Moses H. Cone*, 460 U.S. at 24-25.  *See also First Family Fin'l Servs., Inc. v. Fairley*, 173 F.Supp. 2d 565, 569 (S.D. Miss. 2001) (*citing Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000)).  Indeed, the Fifth Circuit has stated that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."  *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 335 (5th Cir. 1987).

The arbitration agreement in this case covers **"**all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease or financing of the vehicle, the terms and provisions of the sale, lease, or financing arrangements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the sale, lease or financing."  This type of language is interpreted broadly by Mississippi courts and by the Fifth Circuit.  *See*, *e.g.*, *Pennzoil Exploration & Prod. Co. v. Ramco Energy*, 139 F.3d 1061, 1067 (5th Cir. 1998), *reh'g denied en banc*, 1998 U.S. App. LEXIS 18505 (5th Cir. 1998) (arbitration clauses containing the language

"relating to" are broad clauses that "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute.") (citation omitted); *New South Fed'l Savings Bank v. Anding*, 414 F.Supp. 2d 636, 651 (S.D. Miss. 2005) ("The Mississippi Supreme Court has noted that broad terms defining the scope of an arbitration agreement such as 'any controversy' are 'broad sweeping' and expansive enough to include most claims related to the contract in question.") (*citing Smith Barney, Inc. v. Henry*, 775 So. 2d 722, 725-26 (Miss. 2001)). In Ms. Lott's Amended Complaint in the State Court Action, she asserts various causes of action against Chase all based upon purchase and financing of the Vehicle. The court finds that all of these claims are covered by the broad language of the arbitration agreement.[4]

Finally, the issue of whether Chase, a non-party to the arbitration agreement, may nevertheless enforce that agreement against Ms. Lott and compel her to arbitrate her claims against Chase will be addressed. Ms. Lott's retail installment contract was assigned to Chase by Thames after defendant purchased the Vehicle. It is well-established that a non-signatory to an arbitration agreement can compel arbitration where the claims against the non-signatory - whether an assignee or merely a third-party - and against the signatory are intertwined. *See*, *e.g.*, *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000), *reh'g denied en banc*, 218 F.3d 745 (5th Cir. 2000) (following Eleventh Circuit in holding that "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the

---

[4] Defendant does not dispute this. Indeed, defendant did not respond to the motion to compel, and her only argument in support of the motion to dismiss is that Chase has presented no evidence that there was a legally binding arbitration agreement.

nonsignatory and one or more of the signatories to the contract.") (*citing MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *Shelley v. Coldwell Banker Real Estate Corp.*, 2006 WL 1313825, at * 2 (N.D. Miss. May 11, 2006) (holding that assignee could enforce arbitration agreement against signatory because of alleged "substantially interdependent and concerted misconduct" between assignor and assignee); *Gulf Guaranty Life Ins. Co. v. Connecticut Gen'l Life Ins. Co.*, 957 F.Supp. 839, 841-42 (S.D. Miss. 1997) (compelling arbitration "where the claims against the non-signatory [were] 'intimately founded in and intertwined with' the agreement containing the arbitration clause.") (citation omitted).

The claims raised by Ms. Lott against Chase in the State Court Action are all based on the retail installment contract she entered into with Thames to finance the purchase of the Vehicle. Her claims all relate to the underlying transaction and the financing of the Vehicle. Ms. Lott also alleges that Chase and Thames orchestrated a scheme to steal her money and defraud her regarding the existing lien on the Vehicle. All of these claims are intertwined and substantially dependent on one another for their resolution. The court finds that it is appropriate to apply equitable estoppel to allow Chase to enforce the arbitration agreement against Ms. Lott.[5]

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendant's motion to dismiss [# 3] is denied and plaintiff's motion to compel arbitration [ # 12] is granted. Defendant is hereby directed to proceed to arbitration on her claims against Chase in the State Court Action, in accordance with the terms of the arbitration agreement.

IT IS FURTHER ORDERED AND ADJUDGED that the instant action is stayed pending

---

[5] Again, defendant does not dispute this point. *See supra* note 4.

the completion of arbitration.[6]

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions, if any, are dismissed as moot.

SO ORDERED and ADJUDGED on this, the 3rd day of January, 2007.


            *s/Keith Starrett*
            UNITED STATES DISTRICT JUDGE

---

[6] The court declines to stay the State Court Action, as requested by Chase in its Complaint. The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. These three exceptions have been narrowly construed and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *United Serv. Protection Corp. v. Lowe*, 354 F.Supp. 2d 651, 659 (S.D. W.Va. 2005) (*citing Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)). The Supreme Court has not yet determined the appropriateness of injunctive relief in cases to compel arbitration. *Id.* (*citing Moses H. Cone*, 460 U.S. at 26 n. 32 ("We need not address whether a federal court might stay a state-court suit pending arbitration.")). The court finds that none of the three exceptions in the Anti-Injunction Act apply in this case. There is no express authorization by Congress of federal courts staying parallel state court proceedings pending arbitration. Section 3 of the FAA provides only that "the court in which such suit is pending" shall stay the proceedings before it if arbitration is required. There is no reference to injunctive relief against underlying state-court proceedings. *See* 9 U.S.C. § 3; *see also Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 392 (5th Cir. 2006) ([Section 3 of the FAA]...by its terms, does not authorize a federal court to enjoin ongoing state proceedings...only federal proceedings."). And the court does not find that either of the other two exceptions provide a compelling basis to grant such a stay. *See Lowe*, 354 F.Supp. 2d at 659. Accordingly, the court will not issue a stay of the State Court Action pending arbitration. Plaintiff will need to seek that relief from the state court itself.